**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES B. DIXON,** | ) | **CASE NO. 1:13 CV 489** |
| | ) | |
| **Plaintiff,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| **COLLIN GINLEY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

*Pro se* plaintiff Charles B. Dixon filed this action under 42 U.S.C. §§ 1983 and 1985 against Cleveland Police Officers Collin Ginley and Thomas Hodous, Police Commander Patrick Stephens, Police Chief Michael McGrath, Cleveland Public Safety Director Martin Flask, and Cleveland Mayor Frank Jackson.  (Doc. # 1).  In the Complaint, plaintiff alleges violations of his civil rights under the Fourth Amendment, as well as various state law tort claims stemming from defendants' purported unlawful search and seizure of Plaintiff.  He seeks compensatory and punitive damages.  For the reasons below, plaintiff's application to proceed in forma pauperis is **GRANTED**, and this case is **DISMISSED**.

## I.  BACKGROUND

The Complaint alleges that, on January 12, 2012, plaintiff drove to the Martin Luther King Jr. Shopping Plaza on Wade Park Avenue in Cleveland to purchase cigarettes.  Plaintiff claims he then exited the parking lot, signaled and turned right on to Wade Park Avenue, proceeded to the traffic light at Crawford Road, signaled and turned left onto Crawford, and

then signaled and turned left onto East 94th Street.

Meanwhile, Officers Ginley and Honous, who had been dispatched to the shopping plaza on reports of recent drug activity, also exited the shopping plaza parking lot and followed plaintiff onto East 94th Street.  Plaintiff parked across the street from his "children's mother's house," approximately six houses from the corner, and the officers pulled up and parked about three to five houses behind plaintiff.  (Doc. # 1 at 5).

The mother of plaintiff's children noticed him sitting in his car smoking a cigarette and approached the driver's side window to speak with him.  The two spoke for three to five minutes, at which time plaintiff claims the officers used the squad car's loud speaker to direct his female companion to back away from the car.  The woman raised her hands, crossed back over the street to her home, and the officers pulled up behind plaintiff's car.

The officers then exited the squad car and approached plaintiff, who remained seated in his car.  Plaintiff contends the officers attempted to open the car doors and, finding the doors locked, one of the officers reached in through the open window, unlocked the driver's door and opened it.  That officer grabbed plaintiff to pull him from the vehicle but he was still wearing his seat belt.  Plaintiff unhooked the belt and the officer pulled plaintiff out of the car, purportedly stating for him to "get the f— out."  (*Id*. at 6).  Plaintiff was then escorted with his hands behind his back to the squad car, was thrown against the car "real hard," and his front pants pockets were searched, revealing currency and a wallet.  (*Id*.).  Plaintiff was handcuffed and remained standing by the squad car while Officer Ginley proceeded to search his vehicle.

Following the search of plaintiff's car, Ginley purportedly ran at plaintiff and, pointing his finger at him, asked plaintiff if he thought "this is a f—ing game," and  took hold of plaintiff

-2-

by the handcuffs.  According to the Complaint, Ginley then opened the back door of the police cruiser,"slammed" plaintiff into the back seat in an upside down position and got in to the back seat next to plaintiff.  (*Id*.).  Officer Hodous entered the back seat of the squad car from the other side, both officers took hold of plaintiff's pants, pulled them down, and one of the officers performed a digital rectal exam on plaintiff, asking "where is the dope at?"  (*Id*.).  The officers then pulled plaintiff's pants back up, pushed hm over onto his side, and got into the front seat of the car.  Plaintiff sat upright and asked the officers "why they were doing this?"  Ginley allegedly responded "we can do what the f— we wanna do."  (*Id*. at 8).

Ginley asked plaintiff for his Social Security number and ran plaintiff's information through the computer system, which provided a read out of plaintiff's criminal history.  Plaintiff asked what he was being arrested for and Hodous stated, "impeding the flow of traffic."  (*Id*.).  The officers radioed for a tow truck, and Hodous instructed another officer who had arrived at the scene to wait for the tow truck while Ginley and Hodous transported plaintiff to the city jail.

The citation issued to plaintiff, a copy of which is attached to the Complaint, indicates the officers charged plaintiff with change of course and having an open container of vodka in his car.  (Doc. # 1-1).  Further, plaintiff attached a copy of the offense/incident report, indicating additional offenses of carrying a concealed weapon, possession of a weapon under disability, and  drug trafficking.  (Doc. # 1-4).[1]

---

[1]  Plaintiff has provided a copy of Officer Ginley's report, which details a different set of events.  (Doc. # 1-4).  Ginley indicates he and Hodous responded to a call for drug activity at the shopping plaza and observed plaintiff immediately driving off upon noticing their arrival.  (*Id*. at 3).  According to the report, plaintiff was observed taking his hands off the wheel, moving items toward the middle compartment, then changing course without a turn signal, and almost causing an accident.  (*Id*.).  Ginley states he activated his lights and sirens and stopped plaintiff's vehicle on East 94th Street.  (*Id*.)  The report says the officers smelled a strong odor of marijuana when they approached plaintiff's vehicle, that they saw marijuana "shake" on plaintiff's lap, an open bottle of vodka in the console cup holder, and a scale in the passenger door

-3-

On January 14, 2012, plaintiff entered pleas of no contest to the open container and change of course charges, consenting to a finding of guilty on both counts.  *See* Cleveland Municipal Court cases: *State of Ohio/ City of Cleveland v. Dixon*, Nos. 2012 TRD 002302, 2012 CRB 001298 (filed on Jan. 13, 2012), available at https://pa.clevelandmunicipalcourt.org/ pa/prodpa.urd/pamw6500.display.  Further, on that same date, plaintiff was indicted in the Cuyahoga County Court of Common Pleas on a single charge of carrying a concealed weapon.  *See State of Ohio v. Dixon*, No. CR-12-558544-A (filed on Jan. 14, 2012), available at http://cpdocket.cp.cuyahogacounty.us/Search.aspx.  Additionally, on February 7, 2012, plaintiff was indicted in this Court on a single count federal indictment for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  *See United States v. Dixon*, No. 1:12-cr-69, Doc. # 1 (N.D. Ohio filed on Feb. 7, 2013).  Subsequently, the state court granted the county prosecutor's motion to terminate the concealed weapons charge and that case was dismissed

---

compartment.  (*Id.*) The report goes on as follows:

> My partner then ordered [Dixon] to turn the car off and to keep his hands on the steering wheel. [Dixon] dropped his right hand onto the top of the middle console before being instructed once again to keep his hands on the steering wheel.  When asked if he had a drivers license, [Dixon] stated, "Yea, in my back left pocket." [Dixon] appeared nervous and again began reaching down with his right hand towards the middle console.  Due to the above observations and the situation escalating [Dixon] was then instructed to step out of the vehicle while keeping his hands straight up.  [Dixon's] hands were then placed on the top of the vehicle.  [Dixon] was then patted down for officer safety and placed into handcuffs without incident.
>
> It was at this time I then recovered . . . [a] .22 caliber revolver with 6 live rounds from the middle console as well as . . . suspected ecstasy and marijuana.  I then read [Dixon] his Miranda rights, which he stated he understood.  We then recovered [Dixon's] ID from his back left pocket, as well as . . . $730.00 of U.S. currency that was in his front pants pockets. We then confirmed through the MDT that [Dixon] had 2 prior weapons charges with guilty pleas.  The  auto was then towed . . . . [Dixon] was then conveyed to CPU where he was booked and housed.

(Doc. # 1-4 at 3-4).

without prejudice to refiling. *See State of Ohio v.  Dixon*, No. No. CR-12-558544-A (docket entry dated Feb.  13, 2012).  Plaintiff is presently being held on the federal felon in possession charge at the Northeast Ohio Correctional Center (NEOCC).

Plaintiff filed the instant Complaint on March 6, 2013, alleging the following claims against defendants Ginley and Hodous: unlawful search and seizure in violation of plaintiff's due process, equal protection, and Fourth Amendment rights; malicious prosecution; false arrest and imprisonment; assault; battery; intentional and negligent infliction of emotional distress; and negligence.  As against defendants Stephens, McGrath, Flask and Jackson, the Complaint alleges claims for respondeat superior liability, negligent training, and failure to instruct, supervise, control and discipline Ginley and Hodous. The Complaint also asserts all of the defendants conspired to violate plaintiff's civil rights in violation of §§ 1983 and 1985 and Ohio common law.  Plaintiff seeks monetary relief.

## II.  STANDARD OF REVIEW

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2]  *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996).  An action has no arguable basis in law

---

[2]  An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendants, if the Court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *Benson v. O'Brian*; 179 F.3d 1014, 1016-17 (6th Cir. 1999);  *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U .S. at 327.  An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.*  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 556 U.S. at 677-678 , further explains the "plausibility" requirement, stating that "a claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.  ANALYSIS

### A.      Proper Parties

Plaintiff sues defendants in their official and individual capacities. To the extent plaintiff sues the defendants in their official capacities, his suit is actually against the City of Cleveland. *Monell v.  Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978).  "Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell*, 436 U.S. at 691 n. 55 (1978)); *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009).  In such case, a plaintiff must show that the alleged violation of his or her constitutional rights resulted from acts representing official policy or custom adopted by the city.  *Monell*, 436 U.S. at 690–91; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245–46 (6th Cir. 1989); *Moore v. Chattanooga Police Dep't*, No. 1:08-cv-174, 2008 WL 3896114, at *5 (E.D. Tenn. Aug.19, 2008).  Plaintiff has not alleged a violation of any custom or policy that resulted in a violation of his constitutional rights.

Further, plaintiff names as defendants a number of municipal officers who he contends are liable solely in their supervisory capacities, including Police Commander Stephens, Chief of Police McGrath, Safety Director Flask, and Mayor Jackson.  As a rule, municipal officers cannot be held liable for the actions of their employees under a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691.  To be held liable for a claim for damages, the supervisor must have encouraged the specific misconduct or in some way directly participated in it.  *See id.* at 690–91; *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Liability cannot be based upon a mere failure to act or the right to control employees.  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach*, 891 F.2d at 1246).  In order for liability to attach to any of the municipal officers/supervisors named

-7-

as defendants, plaintiff must allege that they did more than play a passive role in the alleged violations or show mere tacit approval of the actions of their subordinates.  *Id.*; *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).  *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (noting that "[p]ersons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability").  In other words, individual liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants."  *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

Here, there are no allegations in the Complaint against Stephens, McGrath, Flask, or Jackson to suggest they directly participated in the conduct giving rise to plaintiff's claims.  At a minimum, plaintiff in the instant case must show that these defendants were personally involved in, encouraged, or condoned the alleged constitutional violations at issue.  *Rizzo*, 423 U.S. at 371.  *See also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).  The Complaint does not contain allegations suggesting any such conduct.  Accordingly, for the foregoing reasons, plaintiff has failed to state a claim upon which relief may be granted against defendants Stephens, McGrath, Flask and Jackson in their individual capacities.

The only claims remaining in the Complaint, therefore, are plaintiff's individual capacity claims against defendants Ginley and Hodous.  The Court addresses the merits of these claims below.

**B.**    **Federal Claims**

       **1.**    ***Section 1983 Claims Related to Traffic Stop: Unlawful Arrest, Search, and Detention***

-8-

Plaintiff alleges false arrest, lack of probable cause, unlawful strip search, and unlawful detention under § 1983. The sum of his legal arguments appears to be that defendants Ginley and Hodous should not have stopped him, searched his vehicle or his person, or arrested him and, therefore, he would not now face federal prosecution in this Court as a result of defendants' arrest and investigation.

To prevail on his § 1983 claims, plaintiff must establish that (1) he was deprived of a right secured by the Constitution or the laws of the United States, and (2) the deprivation was caused by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Simescu v. Emmet Cnty. Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991).

A person convicted of a crime may not raise claims under § 1983 if a judgment on the merits of those claims would affect the validity of his conviction or sentence, unless the conviction or sentence has been set aside.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).  The holding in *Heck* applies whether plaintiff seeks injunctive, declaratory or monetary relief.  *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401 at * 1 (6th Cir. May 5, 1998).  Moreover, *Heck* applies pre-conviction as well as post conviction.  *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 398 (6th Cir. 1999); *see Gorenc v. City of Westland*, No. 02-2456, 2003 WL 21782610 (6th Cir. July 31, 2003) (finding plaintiff's pre-trial challenge under §1983 to a speeding ticket is barred by *Heck* because it would necessarily imply the invalidity of the traffic citation).  *Heck* precludes § 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges.  *Gorenc*, 2003 WL 21782610 at * 2; *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir.

-9-

1999).

Applying these general rules, the Supreme Court in *Heck* observed in a footnote that in some cases a §1983 plaintiff may bring an action for damages resulting from an unreasonable search or seizure without first having the conviction set aside.  512 U.S. at 486 n. 7.  The Court noted that, due to doctrines such as harmless error and inevitable discovery, a determination that a search was unlawful would not necessarily always imply the invalidity of the conviction.  *Id.*  The Court also stated, however, that to recover in such an action, the plaintiff must show an actual compensable injury, and the injury must be distinct of being convicted and imprisoned.

Here, plaintiff first claims Officers Ginley and Hodous lacked probable cause to initiate a traffic stop and to arrest him.  Plaintiff, however, entered a no contest plea and was found guilty in state court as to open container and change of course charges.  He was fined $200.  *State of Ohio/ City of Cleveland v. Dixon*, Nos. 2012 TRD 002302, 2012 CRB 001298, *supra*.  If plaintiff were successful in his false arrest claims, it would necessarily imply the invalidity of his state court convictions. *See Hutson v. Felder*, No. CIV.A. 5:07-183-JMH, 2008 WL 4186893 (E.D. Ky. Sept. 10, 2008) ("[W]here a citizen is convicted of the offense which provoked the arrest, probable cause for the arrest is conclusively established, and *Heck* presents an absolute bar to any claim for false arrest under Section 1983.").

Plaintiff also challenges the legality of the search of his vehicle, which resulted in discovery of an open container of vodka and a concealed weapon.  *Heck* bars "§ 1983 Fourth Amendment claims where the contested search produced the *only* evidence supporting the conviction and no legal doctrine could save the evidence from exclusion[.]"  *Harper v. Jackson*, 293 F. App'x 389, 392 (6th Cir. 2008) (citations and internal quotation marks omitted; emphasis

-10-

in original).  If plaintiff were successful in challenging the search of his vehicle, it would result in the suppression of both the open container and firearm found within the car.  Because this is the only evidence supporting his state conviction for open container, as well as the only evidence supporting the pending charge for felon in possession in this Court and those criminal proceedings have not resolved in his favor, *Heck* bars this claim as well.

Next, plaintiff claims that Officers Ginley and Hodous conducted a strip search/physical body cavity search of his anal cavity during a routine traffic stop without reasonable suspicion that he was carrying or concealing weapons or contraband.  The Fourth Amendment guarantees "the [r]ight of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  This guarantee is "subject only to a few specifically established and well delineated exceptions."  *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993).  One of those exceptions is where the search of a person is conducted incident to that person's arrest.  *United States v. Robinson*, 414 U.S. 218 (1973).  In a search incident to a lawful arrest, the officer may search for weapons and evidence so long as the arrest itself was valid.  *Id.* at 235.  Not only must the search be pursuant to a warrant or one of the warrantless exceptions, the search must not be unreasonable.  *Vernonia Sch. Dist. v. Acton*, 515 U.S. 646, 653 (1995). Several circuit courts have ruled that strip searches are not included in the category of permissible searches incident to arrest.  *See Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1447-50 (9th Cir. 1991); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1268-71 (7th Cir. 1984): *cf. Burns v. Loranger*, 907 F.2d 233, 236 (1st Cir. 1990); *Helton v. United States*, 191 F. Supp. 2d 179, 185 (D.D.C. 2002).  *See also Foster v. City of Oakland*, 621 F. Supp. 2d 779, 791 (N.D. Cal. 2008) ("A 'full search' incident to arrest . . . does not permit a strip search or bodily

-11-

intrusion.").    While *Heck* precludes Dixon from challenging the lawfulness of his arrest, he is not barred from challenging to the reasonableness of the anal cavity/strip search, which would not necessarily imply the invalidity of his state court convictions or any conviction or sentence that might result from his federal prosecution.   *Heck*, 512 U.S. at 486 n. 7.   Nevertheless, plaintiff has failed to plead any actual compensable injury, distinct from being convicted and imprisoned, as a result of Ginley's and Hodous's actions.  *Braxton v. Scott*, 905 F. Supp. 455, 458 (N.D. Ohio 1995) (a § 1983 plaintiff, who seeks to recover damages resulting from an illegal search or seizure without overturning the related conviction, must meet two criteria: (1) success on the § 1983 claim must not necessarily imply the invalidity of the conviction; *and* (2) he must allege a compensable injury other than the conviction or imprisonment which has not been overturned). *Braxton v. Scott*, 905 F. Supp. 455, 458 (N.D. Ohio 1995).  Here, plaintiff does not allege any physical injury as a result of defendants' conduct.  Instead, he makes only vague claims of emotional injury and distress, and those claims stem directly from the fact of his resulting conviction and confinement.  Again, such claim are not compensable under *Heck*. 512 U.S. at 487 n. 7.

Finally, to the extent plaintiff challenges his continued confinement, his sole federal remedy is a writ of habeas corpus.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  In other words, a complaint seeking relief under§ 1983 is not a permissible alternative to a petition for writ of habeas corpus if the plaintiff essentially challenges the legality of his confinement.  *Id.*

Accordingly, for all the foregoing reasons, plaintiff's false arrest, unlawful detention, and illegal search claims are dismissed.

### 2.    *Malicious Prosecution*

-12-

Plaintiff next alleges a cause of action for malicious prosecution.  The Sixth Circuit recognizes a separate constitutional claim of malicious prosecution under the Fourth Amendment, which "encompasses wrongful investigation, prosecution, conviction, and incarceration."  *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006).  To succeed on a malicious prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove four elements.  First, plaintiff must show that a criminal prosecution was initiated against him and that defendants "ma[d]e, influence[d], or participate[d] in the decision to prosecute."  *Sykes v. Anderson*, 625 F.3d 294, 308–310 (6th Cir. 2010); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).  Second, because a § 1983 claim is premised on the violation of a constitutional right, plaintiff must show that there was a lack of probable cause for the criminal prosecution.  *Sykes*, 625 F.3d at 308–310.  Third, he must show that, "as a consequence of a legal proceeding," he suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure.  *Id.*  Fourth, the criminal proceeding must have been resolved in plaintiff's favor.  *Id.*

The Court does not need to address the first three elements, because, as already discussed, plaintiff cannot demonstrate that the criminal proceedings against him have resolved in his favor.  His claim of malicious prosecution is dismissed.

### 3.    *Abuse of Process*

The Sixth Circuit has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983.  *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676 (6th Cir. 2005); *cf. Loch v. Watkins*, 337 F.3d

574, 577 (6th Cir. 2003) (describing, without discussion, a § 1983 claim as an abuse of process claim); *Eldridge v. Gibson*, 332 F.3d 1019, 1020 (6th Cir. 2003) (discussing a district court's decision to vacate an earlier opinion to consider a § 1983 complaint for abuse of process).  "If such a claim is cognizable as a federal constitutional claim, however, the elements necessary to prove it would likely mirror those of state law."  *Voyticky*, 412 F.3d at 676-77 (citing *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2nd Cir. 1994)).  Under Ohio law:

> The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaeffer, & Rowe Co. et. al.*, 68 Ohio St. 3d 294 (1994).  An abuse-of-process claim is subject to dismissal when it is supported only by "conclusory allegations regarding the defendants' ulterior motives with no facts to support those contentions." *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 497 (6th Cir. 2008) (quoting *Hahn v. Star Bank*, 190 F.3d 708, 718 (6th Cir. 1999)) (internal quotation marks omitted).

Here, the extent of plaintiff's allegations with respect to an ulterior motive are that Ginley and Hodous "used the legal process with the ulterior purpose, to wit, for personal financial benefit."  This assertion  is wholly conclusory and is not supported by any facts to show how or in what way Ginley and Hodous stood to benefit financially from plaintiff's arrest and prosecution on state and federal charges.  Consequently, plaintiff has failed to state a claim for abuse of process under federal or state law.  *Id.*

### 4.    *Conspiracy*

In his fourth count, plaintiff alleges a cause of action for conspiracy under §§ 1983 and

1985 against Ginley and Hodous.  A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  It must be shown, however, that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act that caused injury to the complainant was committed in furtherance of the conspiracy.  *Id* at 943–44. Further, under § 1985, a plaintiff must also demonstrate that the conspiracy was developed with the purpose of depriving, directly or indirectly, a person or class of persons of equal protection of the laws.  *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003).  The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination."  *Id.* (citing *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)).  Whether brought under § 1983 or § 1985, conspiracy claims must be pled with some degree of specificity.  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy.  *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (holding that plaintiff failed to state a claim for conspiracy pursuant to § 1985 for failure to allege a meeting of the minds).

Plaintiff asserts that Dixon and Hodous engaged in a conspiracy to deprive him of his liberty without due process and his right to equal protection of the laws.  Specifically, the Complaint alleges that these officers made a series of false statements and fabricated police reports, with the shared goal of arresting plaintiff and detaining him in violation of his civil rights.  These are the types of claims, however, that are best raised during a criminal trial to

exclude evidence, and thus, would obviously affect the validity of Dixon's state court convictions and/or imply the invalidity of any conviction or sentence that might result from prosecution of the pending federal charges.  Further, Dixon alleges no injuries except that he is "confined without probable cause."  Since Dixon's loss of liberty seems to be his only claim of injury, and the loss of liberty is a result of his conviction and sentence, his conspiracy claims are not cognizable.  *Heck*, 512 U.S. at 489-90.  His conspiracy claims under  § 1983 are therefore dismissed.

Moreover, plaintiff fails to establish the existence of a racially motivated conspiracy. He makes only conclusory allegations that defendants acted in concert and has failed to present any factual allegations suggesting the existence of an actual agreement between two or more persons to discriminate against him on the basis of his race.  His conspiracy claims under § 1985 are also dismissed. *Gutierrez*, 826 F.2d at 1538; *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (stating that legal conclusions alone are not sufficient to present a valid claim, and this court is not required to accept unwarranted factual inferences).

### C.      State Law Claims

Plaintiff's remaining claims for assault, battery, intentional and negligent infliction of emotional distress, negligence, and common law conspiracy all arise, if at all, under state law. Subject matter jurisdiction for these state law claims cannot be based on diversity of citizenship under 28 U.S.C. § 1332(a)(1), which vests the federal district courts with jurisdiction in cases of sufficient value between citizens of different states.  Plaintiff and all of the defendants are citizens of the state of Ohio.  The Court can exercise supplemental jurisdiction over the state law claims if the Court is also entertaining federal law claims that derive from the same nucleus

-16-

of operative facts and when considerations of judicial economy dictate having a single trial.

*United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966).  The Court, however, has

discretion in hearing state law matters and, in cases where the federal law claims are dismissed

before trial, the state law claims should also be dismissed.  *Id.* at 726.  Because the Court has

dismissed all of plaintiff's federal law claims, it declines jurisdiction over plaintiff's state law

claims and those claims are dismissed.

### IV.  CONCLUSION

Accordingly, plaintiff's application to proceed *in forma pauperis* is **GRANTED** (Doc. #

2), plaintiff's motion for an order compelling NEOCC to release his mental health records is

**DENIED as MOOT**, and this case is **DISMISSED** pursuant to 28 U.S.C. § 1915(e). The Court

**CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be

taken in good faith.[3]


            **IT IS SO ORDERED**.

                                          */s/Dan Aaron Polser 6/3/13*
                                          **Dan Aaron Polster**
                                          **United States District Judge**

---

[3] 28 U.S.C. § 1915(a)(3) provides, "An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith."